UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| SHANNA MADDEN, *Administratrix*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 6:23-CV-29-REW-HAI |
| v. | ) | |
| | ) | |
| JETTA OPERATING APPALACHIA, | ) | RECOMMENDED DISPOSITION[1] |
| LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On January 27, 2023, Plaintiff (the Estate of Tristan Tray Madden, through administratrix Shanna Madden) filed a Complaint in Leslie Circuit Court. D.E. 1-1. The Complaint alleges that Defendants Jetta Operating Appalachia LLC and John Holliday committed the torts of attractive nuisance, common law negligence, and strict liability/negligence *per se*. According to the Complaint, Tristan Tray Madden (who was 22 years old) died on January 28, 2022, in a crude-petroleum well on Jetta's property in Leslie County. For clarity, the Court will refer to the decedent as "Tray," with no disrespect intended.

## I. Background on Removal/Remand

On March 2, 2023, Defendants removed the case to federal court and alleged in the notice of removal that Defendant Holliday had been fraudulently joined to undermine diversity jurisdiction. D.E. 1. Like Plaintiff, Mr. Holliday (an employee of Jetta) is a citizen of Kentucky.

---

[1] The merits-based evaluation conducted herein requires a recommendation under 28 U.S.C. § 636(b)(1)(B). Remand motions "are dispositive" and can only be granted by a District Judge. *Vogel v. U.S. Office Prod. Co.*, 258 F.3d 509, 517 (6th Cir. 2001). Motions for remand "fall into the category of motions for which a Magistrate Judge must issue a report and recommendation." *Miller v. Hurst*, No. 3:17-CV-791, 2018 WL 950088, at \*2 n.3 (M.D. Tenn. Feb. 16, 2018), *report and recommendation adopted*, 2018 WL 1256652 (M.D. Tenn. Mar. 12, 2018)).

According to the Complaint, it was Holliday who discovered Tray's body. D.E. 1-1 ¶ 10. Holliday told police that, a week earlier, he had found Tray on the same oil tank smoking a cigarette. *Id*. ¶ 11. He then told Tray to leave. The Complaint alleges Defendants "failed to take appropriate precautions to secure the tank and eliminate the known risk of harm to others." *Id*. ¶ 14. The Complaint alleges the top of the tank was not properly secured and it lacked required warning signs. *Id*. ¶ 15.

In their notice of removal, Defendants argue the Complaint fails to state a claim against Holliday for several reasons. D.E. 1 at 3-5. First, attractive nuisance cannot apply in this case because the doctrine pertains only to children, and Tray was an adult. Second, attractive nuisance would not apply to Holliday because he is a mere employee of Jetta, not the possessor of the property. Third, because Tray was a trespasser, negligence in terms of premises liability would not apply—no duty of care is owed to trespassers aside from the duty to not inflict intentional injury. Fourth, Defendants argue that statutes regulating oil storage facilities do not create a cause of action against a mere employee like Holliday.

Because of the fraudulent-joinder allegations in the notice of removal, the Court ordered Plaintiff to show cause "why Defendant Holliday should not be dismissed for fraudulent joinder, submitting any relevant proof and addressing all implicated topics." D.E. 5.

On March 10, Plaintiff filed her response to the show-cause order and moved to remand. D.E. 7, 10.[2] Plaintiff argues:

> Holliday maintained the oil storage tank in question, he had the authority to control the storage tank, he was aware that the tank had been visited by the Decedent the week prior to the incident in question and thus it was foreseeable that Decedent would revisit the storage tank, the storage tank was unsecured, there was an extremely toxic substance contained within the unsecured storage tank, and the lid to the unsecured storage tank was not locked nor equipped with safety

---

[2] Docket Entries 7 and 10 are identical, except 10 is docketed as a motion and accompanied by a prosed order remanding the case.

mechanism to avoid it falling and entrapping someone.  The tank itself was made very accessible to anyone in the area as the lid was unsecured, there [were] steps leading up to the top of the tank where the unsecured lid is located, and the lack of any warnings posted of any dangers of toxic inhalation.  Additionally, after the fatal incident occurred, the Defendants then took action to secure the tank lid with a simple padlock that could have been used prior to the incident and prevented the fatal outcome.

*Id*. at 3.  Plaintiffs attach the KSP investigation report (D.E. 7-2), along with photos of the tank and Tray's death certificate (D.E. 7-3 to -5).  According to these documents, Tray perished from the "combined toxic effects of methane, ethane, propane, isobutane, and n-butane gases."  D.E. 7 at 4 (quoting D.E. 7-5).

On March 20, Defendants filed their response.  D.E. 13, 14.  The responses includes an affidavit from Holliday with additional photographs (D.E. 13-1), additional investigatory reports (D.E. 13-2, -3) and an affidavit from another Jetta employee, Danny Huff (D.E. 13-4).

On March 23, Plaintiff filed a reply.  D.E. 16.  District Judge Wier then referred the remand matter to the undersigned.  D.E. 17.

As to what happened to Tray, Holliday says in his uncontradicted affidavit that, on January 28, 2022, he drove up to the oil tank and saw what he thought was a pile of clothes on top.  D.E. 13-1 ¶ 9.  "When I got closer, I saw it was a person leaning into the Tank, whom I later learned was Tray.  Tray's head and torso were inside the Tank and covered by a blanket."  *Id*.  Mr. Huff states in his uncontradicted affidavit that he also "personally observed that Tray's head and torso were inside the Tank and covered by a blanket.  I saw that Tray's boots and pants were on the ground at the bottom of the Tank."  D.E. 13-4.  In a "Final Diagnosis" from the Kentucky Justice & Public Safety Cabinet, Sarah Maines, MD, states that, per the coroner's report, "this decedent had a history of huffing 'crude oil fumes' and was found with his head at the opening of a crude

3

oil holding tank." D.E. 13-3 at 2. She suggests Tray was "[m]ost likely sniffing the fumes for a recreational euphoria. Lost consciousness and expired due to oxygen deprivation." *Id*. at 3.

## II. Legal Standards:  Diversity of Citizenship and Fraudulent Joinder

Citizenship is a necessary element of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). Diversity-based removal requires "plausible allegation[s]" of complete diversity and a sufficient amount in controversy. *Naji v. Lincoln*, 665 F. App'x 397, 400 (6th Cir. 2016). Under the complete diversity rule, the citizenship of each plaintiff must be diverse from the citizenship of each defendant. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). The removing party bears the burden of demonstrating that removal of this action is proper. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 549 (6th Cir. 2006). Here, there is no dispute that the amount-in-controversy requirement is satisfied.

A corporation is a citizen of the state or states where "it has been incorporated and . . . where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). There is no dispute that Jetta has no members that are Kentucky citizens and that Plaintiff and Holliday are citizens of Kentucky.

"To prove fraudulent joinder, the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." *Chambers v. HSBC Bank USA, N.A.*, 796 F.3d 560, 564-65 (6th Cir. 2015) (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)). "If there is a colorable basis for predicting that a plaintiff may recover against non-diverse defendants, [the district] Court must remand the action to state court." *Taco Bell Corp. v. Dairy Farmers of Am., Inc.*, 727 F. Supp. 2d 604, 607 (W.D. Ky. 2010) (citing *Coyne*, 183 F.3d at 493). In other words, if Plaintiff's claims have even "a 'glimmer of hope,' there is no fraudulent joinder." *Murriel-Don Coal Co. v. Aspen Ins. UK*

4

*Ltd.*, 790 F. Supp. 2d 590, 597 (E.D. Ky. 2011) (quoting *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999)).  This is a "heavy burden," *Mayes v. Rapoport*, 198 F.3d 457, 463 (4th Cir. 1999), as Jetta must demonstrate that there is no genuine basis upon which Plaintiffs may be able to recover against Holliday, *Coyne*, 183 F.3d at 493.

The standard for a defendant to successfully show fraudulent joinder is even higher than the standard to succeed on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Anderson v. Merck & Co. Inc.*, 417 F. Supp. 2d 842, 845 (E.D. Ky. 2006).  "[T]he benefit of the doubt given a plaintiff as part of the fraudulent joinder inquiry should be more deferential than even that given under Rule 12(b)(6) . . . .  [A] decision overruling a motion for remand where the defendant is claiming fraudulent joinder connotes that a plaintiff's claim, as to the non-diverse defendant, has no basis in law or reason."  *Little v. Purdue Pharma, L.P.*, 227 F. Supp. 2d 838, 846-47 (S.D. Ohio 2002); *see also Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433 (6th Cir. 2012).

As is always the case in matters concerning comity and federalism, any ambiguity must be resolved against removal.  The statutes conferring removal jurisdiction "are to be construed strictly because removal jurisdiction encroaches on a state court's jurisdiction" and ambiguities regarding the scope of removal "should be resolved in favor of remand to the state courts."  *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).  Furthermore, any ambiguities in the relevant state law must be resolved in the light most favorable to the plaintiff.  *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 951 (6th Cir. 2011) (citing *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir. 1994)).  "All doubts as to the propriety of removal are resolved in favor of remand."  *Coyne*, 183 F.3d at 493.

Kentucky's pleading standards apply in evaluating whether Plaintiff pleads a colorable claim against Holliday. *Wells v. KONE, Inc.*, No. 5:19-CV-340-JMH, 2019 WL 5865926, at *3 (E.D. Ky. Nov. 8, 2019); *Combs v. ICG Hazard, LLC*, 934 F. Supp. 2d 915, 923 (E.D. Ky. 2013); *In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 889 F. Supp. 2d 931, 940 (E.D. Ky. 2012). Although Kentucky courts have moved in the direction of adopting the more stringent federal pleading requirements, they still apply a "notice pleading" standard, where the "central purpose of pleadings remains notice of claims and defenses." *Pete v. Anderson*, 413 S.W.3d 291, 301 (Ky. 2013) (quoting *Hoke v. Cullinan*, 914 S.W.2d 335, 339 (Ky. 1995)); *see also Red Hed Oil, Inc., v. H.T. Hackney Co.*, 292 F. Supp. 3d 764, 771 (E.D. Ky. 2017). But this notice pleading still requires that sufficient notice has been given *of a colorable claim. Wells*, 2019 WL 5865926, at *3.

In Kentucky, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Ky. R. Civ. P. 8.01(1)(a). "[T[he Rules of Civil Procedure with respect to stating a cause of action should be liberally construed" and "much leniency should be shown" in construing whether a complaint states a cause of action." *Smith v. Isaacs*, 777 S.W.2d 912, 915 (Ky. 1989).

In the fraudulent joinder context, the Court may pierce the pleadings and consider summary judgment evidence, such as affidavit content, but only for the limited purpose of identifying "undisputed facts that negate the claim." *Casias*, 695 F.3d at 433. Thus, "[a] solitary self-serving affidavit cannot eliminate the prospect of any dispute, particularly where the complaint is in direct disagreement." *Smith v. Smithkline Beecham Corp.*, Civ. Action No. 10-73-ART, 2010 WL 3432594 at *4 (E.D. Ky. Aug. 30, 2010). Here, the Court renders its decision on the Complaint

itself and the legal argument of the parties.  Though some evidentiary documents have been filed

on this matter, no summary-judgment-type evidence is necessary to the Court's decision.

### III.  Attractive Nuisance

Paragraph 12 of the Complaint describes the oil tank as an "attractive nuisance."  D.E. 1-1

at 3.  Plaintiff's show cause response and motion to remand (D.E. 7, 10) and reply (D.E. 16) make

no reference to the "attractive nuisance" doctrine, which the Court takes as a concession that this

theory of tort liability does not apply.  Nevertheless, the Court addresses it for the sake of

completeness.

Defendants' position is that there can be no colorable attractive-nuisance claim against

Holliday because the tort of attractive-nuisance (1) only applies when the injured party is (unlike

Tray) a child, and (2) only applies to the property possessor, which Holliday is not:

> 10.     First, Kentucky's attractive nuisance doctrine provides that a possessor of
> land may be subject to liability if a *child* is physically harmed, even when the child
> is a trespasser, where it is unlikely that the *child* will appreciate the risk involved
> in his presence or intermeddling upon the property.  *See Mason v. City of Mt.
> Sterling*, 122 S.W.3d 500, 506 (Ky. 2003) (referring to RESTATEMENT
> (SECOND) OF TORTS § 339).
>
> 11.     Holliday is simply Jetta's employee—he does not possess or own any of the
> property in question.  But more importantly, it is quite clear that the attractive
> nuisance doctrine applies only to *children*. *Id.  See also Hayes v. D.C.I. Properties-
> D KY, LLC*, 563 S.W.3d 619 (Ky. 2018) (refusing to apply attractive nuisance to
> 16-year old). Plaintiff unequivocally states that Tray was a 22-year old adult at the
> time of the events described in her Complaint. (Compl. at ¶ 2).  Because Holliday
> is not the possessor of the premises and because Tray was not a child at the time of
> the events described in the Complaint, the attractive nuisance doctrine cannot
> conceivably be applicable to Holliday.

D.E. 1 at 3-4.

The Court here focuses only on the essential element that the injured person must be a

child.  As the Kentucky Supreme Court stated in *Hayes*:

> [Courts apply five factors] to determine liability for attractive nuisance:

7

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Mason,* 122 S.W.3d at 506 (citing Restatement (Second) of Torts § 339 (1965)). "When a youth has grown beyond the protection humanely afforded a child of tender years from his indiscretion and lack of capacity to appreciate a peril, he is not entitled to the benefit of the doctrine any more than is a normal adult, qualified however in an occasional case of undeveloped mentality." *Chesser,* 339 S.W.2d at 196.

*Hayes*, 563 S.W.3d at 624. The Court in *Hayes* found that attractive nuisance could not apply when the injured person was a 16-year-old with a driver's license. *Id.*

Thus, Defendants have supplied what appears to be binding caselaw establishing that an attractive nuisance claim would be invalid when the injured party is a legal adult. To counter this argument, Plaintiff would need to supply authority indicating that attractive nuisance in Kentucky could apply to a 22-year-old man. This Plaintiff has not done. D.E. 7, 10, 16. Plaintiff appears to concede there is no colorable attractive-nuisance claim against Holliday, and the Court finds this is in fact the case.

8

## IV. Negligence

The Complaint accuses Holliday of premises-liability negligence, saying he and Jetta breached their duty of reasonable care by failing to secure the oil tank.  D.E. 1-1 at 2.  But the facts of the Complaint, taken as true, fail to establish as a matter of law a duty on Holliday's part that was breached.

Defendants emphasize the minimal duty owed to trespassers under Kentucky law.  They point to Ky. Rev. Stat. § 381.232, which states, "The owner of real estate shall not be liable to any trespasser for injuries sustained by the trespasser on the real estate of the owner, except for injuries which are intentionally inflicted by the owner or someone acting for the owner."  And section 381.231(1) defines a trespasser as "any person who enters or goes upon the real estate of another without any right, lawful authority or invitation[.]"  A person who trespasses "does so at his own peril" and "no one, by a wrongful act, can impose a duty upon another."  *Kirschner by Kirschner v. Louisville Gas & Elec. Co.*, 743 S.W.2d 840, 843 (Ky. 1988) (quoting *Kentucky Cent. R. Co. v. Gastineau's Adm'r*, 83 Ky. 119, 122 (1885)).

Plaintiff appears to concede that Tray was a trespasser.  D.E. 7 at 2.  At the very least, Plaintiff does not argue against this categorization.

Defendants argue that, because Tray was a trespasser, under § 381.232, they owed him no duty of care and can only be liable for intentionally inflicted injuries.  D.E. 1 at 4.

The Kentucky Supreme Court has construed "intentionally inflicted" in this statute as meaning "inflicted by *willful, wanton,* or *reckless* conduct."  *Hayes v. D.C.I. Properties-D KY, LLC*, 563 S.W.3d 619, 624 (Ky. 2018) (quoting *Kirschner*, 743 S.W.2d at 842).  The statute codifies the common-law rule that the possessor of premises "owes no duty to . . . a trespasser to keep the premises safe for use of either, but he must refrain from inflicting or exposing him to

9

wanton or willful injury or from setting a trap for him." *Id.* at 624 n. 5 (quoting *Kirschner*, 743 S.W. 2d at 844). A landowner's duty to a trespasser is "merely negative—it must not, when it knows of the peril, act maliciously or with a disregard of obvious consequences." *Id*. at 843; *see also Williams v. Niehaus*, No. 2019-CA-000203-MR, 2020 WL 1815993, at *5 (Ky. Ct. App. Apr. 10, 2020) ("Because the [plaintiffs] were trespassers at the time of the subject accident, [the defendant's] liability was limited to those damages 'intentionally inflicted by the owner or someone acting for the owner.'").

Plaintiff's claim thus hinges on whether the Complaint alleges Holliday essentially set a trap for Tray to willfully, wantonly, or recklessly injure him. Caselaw shows that one can intentionally inflict injury by, for example, hanging an unmarked wire 18 inches above a road known to be traveled by trespassing motorcycle riders. *Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 883 (6th Cir. 1992). The thing about *Middleton* is that the property's manager, knowing that trespassers were riding through his property, intentionally *added* the wire for the purpose of deterring the trespassers. *Id*. at 883-84. In this case, Plaintiff's allegation against Holliday is that he left things the way they were after Tray was caught trespassing a week before his death. In contrast, the *Middleton* defendants made their property *more* dangerous than the trespassing plaintiff originally encountered it. *See also Carter v. CSX Transp., Inc.*, No. 3:04-CV-487-S, 2006 WL 2425338, at *5 (W.D. Ky. Aug. 18, 2006) (finding no trespasser liability when there was no evidence the defendant took any action to make a dangling wire more dangerous than it normally would have been); *Est. of Whitaker ex rel. King v. Miller Bros. Coal*, LLC, No. 2011-CA-001649-MR, 2012 WL 6061744, at *5 (Ky. Ct. App. Dec. 7, 2012) (explaining that a duty to a trespasser attaches only when the trespasser is "known to be in danger").

This case is materially different from *Middleton*.  In no way does the Complaint suggest that Holliday took action to make the tank area more dangerous so as to willfully, wantonly, or recklessly injure Tray, should he return.  The Complaint states that Holliday found Tray sitting atop the tank smoking a cigarette and asked him to leave.  D.E. 1-1 ¶ 11.  This scenario is not suggestive of grave peril.  The Complaint alleges that Holliday afterward failed to make the oil tank more secure, such as padlocking the lid or erecting a locked fence around it.  Plaintiff's filings discuss the various actions Holliday could have taken to make the tank less accessible to a trespasser, but this is not the same as establishing a duty of care.  *See Williams v. Niehaus*, No. 2019-CA-203-MR, 2020 WL 1815993, at *5 (Ky. Ct. App. Apr. 10, 2020) (finding that allegations of negligent repair or maintenance by the landowner do not amount to intentional injury to a trespasser).

This case is more like *Hayes*, where the injured sixteen-year-old found an unattended piece of heavy machinery (a "sheepsfoot compactor") and took it for a joyride, injuring himself.  *Hayes*, 563 S.W.3d at 621-22.  Tray's decision to open the oil tank is akin to Hayes's decision to ride the compactor.  Neither scenario suggests an intent to injure the trespasser.

Plaintiff argues that Tray's status as a trespasser did not obviate Holliday's duty of care to Tray when a dangerous item like an oil tank is involved.  Plaintiff quotes a case which says:

> "Kentucky courts consider [the injured party's] traditional status [as invitee, licensee, or trespasser] along with other circumstances such as 'foreseeability, the gravity of the potential harm, and the possessor's right to control his property' to determine the extent of the duty." *Bryant v. Jefferson Mall Co., L.P.*, 486 S.W. 3d 310, 312 (Ky App. 2015) (emphasis added).

D.E. 16 at 5.  But Plaintiff does not point to a case in which a court actually found that the gravity of the potential harm created a duty towards a trespasser aside from the "intentionally inflicted" standard of § 381.232.  And *Hayes* and *Kirschner* likewise involved highly dangerous objects

11

(heavy machinery and a high voltage tower) but found no duty to trespassers beyond the
"intentionally inflicted" standard.

The facts in the Complaint fail to establish that Holliday intentionally (through willful,
wanton, or reckless conduct) inflicted injury on Tray, a trespasser. Thus, the Complaint contains
no colorable premises-liability negligence claim against Holliday. Specifically, Holliday owed no
duty to Tray as a matter of law that he is alleged to have breached. All Holliday is alleged to have
done in response to Tray's trespass is to order him to leave and then leave the property as it was.
D.E. 1-1 ¶ 11. This is the opposite of setting a trap.

## V.  Strict Liability

The Complaint describes the oil storage tank as an "ultra-hazardous activity to which
Defendants are strictly liable." D.E. 1-1 at 4. Plaintiff cites Ky. Rev. Stat. Ann. §§ 353.565 &
466.070. *Id*. at 4, 5. Defendants point out that these must be incorrect citations, as there is no
§ 466.070 and § 353.565 is irrelevant to this case. D.E. 1 at 5 & n.1. They presume Plaintiff is
relying on § 353.656 and argue in their notice of removal that this statute

> applies only to "well operators," which is defined in KRS 353.510 as the owners of
> the property. Holliday is simply a Jetta employee. He does not individually own
> or operate any oil-storage tanks; nor does Plaintiff allege that he does. Because the
> statutes in question do not apply to him individually, Holliday did not owe Plaintiff
> a statutory duty and thus, Plaintiff cannot maintain a strict liability claim against
> him.

*Id*. at 5. The Court also presumes that Plaintiff meant to cite § 446.070, the negligence-*per-se*
statute, which states: "A person injured by the violation of any statute may recover from the
offender such damages as he sustained by reason of the violation, although a penalty or forfeiture
is imposed for such violation."

Plaintiff's show-cause response (D.E. 7, 10) fails to address Defendant's argument that
Holliday as an employee does not have statutory liability. The filing states that the Complaint

12

includes an action against Holliday for "strict liability . . . due to the ultrahazardous activity of owning, operating, controlling, and/or maintaining the gas storage tanks near Decedent['s] home and the risk of harm the tanks posed to others." D.E. 7 at 5. But Plaintiff cites no statute, regulation, or case law suggesting that an employee like Holliday may be found liable under such a theory. Further, Plaintiff's reply brief (D.E. 16) makes no mention of strict liability and cites no statute or regulation. It is not the Court's job to search for authority in support of Plaintiff's claims. In the absence of any argument in favor of strict liability, the Court concludes the Complaint states no colorable claim of such against Holliday.

## VI. Forum-Defendant Rule

Plaintiff argues that "remand is required under the forum Defendant rule because John Holliday is a citizen of the state where this court sits." D.E. 7 at 6. Plaintiff argues, "A case that is otherwise removable based on diversity jurisdiction 'may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.' 28 U.S.C. § 1441(b)(2)." This argument begs the question because the issue at hand is whether Holliday is a "properly joined" defendant. Defendants removed this case on the theory that Holliday was improperly joined. Because, for the reasons discussed above, Holliday was not properly joined, Jetta has a right to have this case heard in federal court.

Plaintiff argues, apparently as a policy matter, that Defendants should have moved to dismiss Holliday in state court rather than litigate fraudulent joinder in federal court. D.E. 7 at 8-9. Plaintiff quotes Judge Thapar's prior criticism of the fraudulent-joinder doctrine. *Id*. at 9. Regardless of whether the fraudulent-joinder rule is good policy, it is the current law in this Circuit that a defendant can remove a case to federal court and argue there that a non-diverse defendant has been improperly joined as described in Section II above.

13

### VII.  Conclusion

For the above reasons, the Court **RECOMMENDS** that Plaintiff's' Motion to Remand (D.E. 10) be **DENIED** and that the non-diverse defendant John Holliday be dismissed as fraudulently joined.  Accepting as true the factual allegations in the Complaint, the Complaint contains no colorable claim against Holliday.  The claims against Holliday have no glimmer of hope, no basis in law or reason.  Defendants have met their burden of showing improper joinder.

Plaintiff's request for attorney fees under 28 U.S.C. § 1447(c) should also be denied because Plaintiff is not the prevailing party.

Any objection to this recommendation must be asserted in response to this Recommended Disposition.  The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute.  Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge.  Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 18th day of April, 2023.

Signed By:

*Hanly A. Ingram*

**United States Magistrate Judge**