UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| SHANNA MADDEN, *Administratrix*, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:23-CV-29-REW-HAI |
| | ) | |
| v. | ) | |
| | ) | |
| JETTA OPERATING APPALACHIA, LLC, *et al.*, | ) | ORDER |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral, United States Magistrate Judge Hanly A. Ingram recommended that the undersigned deny DE 10, Plaintiff Shanna Madden's motion to remand. *See* DE 18 (Recommended Disposition). Madden timely objected. *See* DE 19 (Objection); 19-1 (Memorandum in Support). The Court **OVERRULES** Madden's objections and **ADOPTS** Judge Ingram's recommendation. The Court **DENIES** DE 10 and dismisses John Holliday from the case.

I. **Background**

On January 28, 2022, twenty-two-year-old Tristan Tray Madden ("Mr. Madden") was found deceased in an oil storage tank owned and operated by Defendant Jetta Operating Appalachia LLC ("Jetta"). *See* DE 1-1 ¶¶ 2, 9. Per the coroner's report, Mr. Madden "had a history of huffing 'crude oil fumes' and was found with his head at the opening of a crude oil holding tank." DE 13-3 at 2. Dr. Sarah Maines, forensic examiner from the Kentucky Justice and Public Safety Cabinet, opined that Mr. Madden was "[m]ost likely sniffing the fumes . . . . [l]ost consciousness and expired due to oxygen deprivation." *Id.* at 3.

One of Jetta's employees, Defendant John Holliday, discovered Mr. Madden's body "while doing a routine maintenance check on the oil storage tank[.]" *Id.* ¶ 10. In an interview with the

1

Kentucky State Police, Holliday indicated that about a week prior to the incident, he had observed Mr. Madden on top of the same oil storage tank smoking a cigarette. *See id.* ¶ 11. Holliday purportedly told Mr. Madden to leave. *See id.*

On January 27, 2023, Plaintiff Shanna Madden (Mr. Madden's mother) sued Jetta and Holliday in the Leslie Circuit Court, raising claims of attractive nuisance, general negligence, and negligence per se. *See* DE 1-1. On March 2, 2023, Defendants removed the case based on diversity of citizenship, 28 U.S.C. § 1332. *See* DE 1 (Notice of Removal). Judge Ingram ordered additional, plenary briefing on subject matter jurisdiction because both Madden and Holliday are Kentucky citizens. *See* DE 5 (Show Cause Order); DE 1-1 ¶¶ 3, 5; DE 1 ¶ 6 (Notice of Removal). Defendants' notice of removal claimed that Holliday was fraudulently joined. *See* DE 1 ¶ 6. Following Judge Ingram's order, Madden argued that Holliday is properly joined and, thus, moved to remand. *See* DE 7 (Response to Show Cause Order); 10 (Motion to Remand). Defendants responded in opposition, *see* DE 12 (Reply to Show Cause Order); 13 (Response to Motion to Remand), and Madden replied, *see* DE 13 (Reply).

On referral, Judge Ingram, with typically thorough treatment, recommended that the undersigned deny Madden's motion to remand and dismiss Holliday as fraudulently joined. *See* DE 18 at 14. Madden timely objected. *See* DE 19; 19-1. Simultaneously, Madden filed a "Notice and Certification of Limitation of Damages" indicating that she "consents to limiting any potential recovery to $74,500.00." DE 20 (Notice). Defendants responded in opposition. *See* DE 21.[1]

---

[1] At the gate, the Court rejects DE 20 and finds it to have no effect. The Court judges jurisdiction at the time of removal. Plaintiff asserts a wrongful death claim pertaining to the death of a man in his early 20s. The Complaint demands damages for "excruciating pain and suffering, horrific mental anguish, lost wages and earning capacity," and "[p]unitive damages for the Defendants' reckless indifference." DE 1-1 at ¶ 29 and Prayer for Relief. The undersigned has handled wrongful death cases as a lawyer or judge for three decades and never seen or even heard of one seeking

2

### II. Standard of Review

#### a. Recommended Disposition

The Court must review de novo the portions of the recommended disposition to which the parties object. *See* 28 U.S.C. § 636(b)(1)(C) (requiring "a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made"); FED. R. CIV. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). The Court need not conduct a "review of a magistrate[] [judge's] factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 106 S. Ct. 466, 472 (1985). Here, Madden seemingly only objects to Judge Ingram's negligence analysis.[2] *See* DE 19-1. The Court tailors its analysis accordingly.

---

an amount, on like claims, for such a modest total. The Complaint preponderantly seeks damages in excess of $75,000; any contrary initial view is nonserious. Although a plaintiff filing a complaint silent as to damages might make a post-removal clarification that matters, *see, e.g. Heyman v. Lincoln Nat'l Life Ins. Co.*, 781 Fed. App'x 463, 469-70 (6thCir. 2019) (referencing potential post-removal clarification when damages addressed specifically "for the first time"(quoting*Shupe v. Asplundh Tree Expert Co.*, 566 Fed. App'x 476, 481 (6thCir. 2014)), that situation does not pertain here for several reasons. The Complaint is not, fairly, silent given the context and particulars of the claim. The post-removal document is not a binding and unequivocal stipulation, by a fiduciary no less, against claiming or accepting excess damages. Most importantly, DE 20 is hardly Plaintiff's *first* word on the topic. The remand motion, initiated by Plaintiff six weeks prior, never mentions amount-in-controversy—Plaintiff never claimed that a remand basis would include failure to pass the § 1332 damage threshold. To the contrary, the briefing all assumes an adequate monetary claim and merely contests diversity, the propriety of defendant joinder, or forum defendant mechanics. Judge Ingram, in DE 5, referenced amount-in-controversy and directed Plaintiff, as to the propriety of jurisdiction, to brief all implicated topics. The Court thus disregards DE 20 as having no impact on the jurisdictional question in this case.

[2] Madden does not clearly indicate the portions of Judge Ingram's recommendation to which she objects. *See* DE 19-1. However, Madden's show cause response, motion to remand, reply, and objection all fail to address the attractive nuisance and negligence per se theories. *See* DE 7; 10; 14; 19. The Court thus deems those arguments conceded. *See Degolia v. Kenton Cty.*, 381 F. Supp. 3d 740, 759-60 (E.D. Ky. 2019) ("[W]hen a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (internal quotation marks omitted) (quoting *Rouse v. Caruso*, No.6-CV-10961-DR, 2011 WL 918327, at *18 (E.D. Mich. Feb. 18, 2011); *see also Humphery v. U.S. Att'y Gen.'s Off.*, 279 F. App'x 328, 331 (6th Cir. 2009). Additionally, the Court finds Judge Ingram's handling of those aspects unimpeachable under Kentucky law and the applicable standards.

### b. Removal and Fraudulent Joinder

Absent a federal question, a party invoking the Court's removal jurisdiction must demonstrate that the amount in controversy exceeds $75,000 and that there is complete diversity (that is, all plaintiffs must be diverse from all defendants). *See* 28 U.S.C. § 1332(a)(1); *see id.* § 1441(a); *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 492 (6th Cir. 1999); § 1446. The Court must resolve all doubts about the propriety of removal in favor of remand and strictly construe the removal statutes. *Eastman v. Marine Merch. Corp.*, 438 F.3d 544-549-50 (6th Cir. 2006); *Coyne*, 183 F.3d at 493. "[T]he determination of federal jurisdiction in a diversity case is made as of the time of removal." *Rogers v. Wal-Mart Stores, Inc.*, 230 F.3d 868, 871 (6th Cir. 2000) (citing *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 451 (6th Cir. 1996)).

Fraudulent joinder is "a judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne*, 183 F.3d at 493. "When a non-diverse party has been joined as a defendant . . . the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined." *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489-90 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 432 (6th Cir. 2012)). Joinder of a non-diverse defendant is fraudulent only if it is "clear that there can be no recovery [against that defendant] under the law of the state on the cause alleged or on the facts in view of the law[.]" *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir. 1968)). "If the plaintiff has even a 'glimmer of hope,' then any charge of fraudulent joinder fails, and the Court must remand the case to state court for want of subject-matter jurisdiction[.]" *Christensen v. ATS, Inc.*, 24 F. Supp. 3d 610, 613 (E.D. Ky. 2014) (internal citation omitted). Further, the Court "may . . . 'pierce the pleadings' and consider summary

4

judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 953 (6th Cir. 2011) (quoting *Travis v. Irby*, 326 F.3d 644, 648-49 (5th Cir. 2003)).

**III.    Analysis**

    **a.  Fraudulent Joinder[3]**

The Court turns to the merits of Madden's objection to Judge Ingram's recommended disposition. *See* DE 19. Judge Ingram concluded that there is no colorable negligence claim against Holliday because the Complaint fails, even under the highly charitable fraudulent joinder rubric, to establish a breach of duty. *See* DE 18 at 9-11. The Court wholly agrees, and thus, overrules the objection.

The Complaint asserts that Holliday was negligent in failing to implement safety measures, such as surrounding the tank with a fence or securing the tank's opening with a lock. *See* DE 1-1 ¶ 15. However, given Mr. Madden's plain status as a trespasser,[4] the law imposes "no duty . . . to keep the premises safe for use[.]" *Chesser v. Louisville Country Club*, 339 S.W.2d 194, 197 (Ky. Ct. App. 1960); *see also Jackson's Adm'r v. Louisville & N.R. Co.*, 46 S.W. 5, 6 (Ky. Ct. App. 1898) ("We know of no law that made it the duty . . . to keep trespassers off [the property]."). Indeed, regarding trespassers, liability arises only "for injuries which are intentionally inflicted by the owner or someone acting for the owner." KY. REV. STAT. ANN. § 381.232. The Kentucky Supreme Court has found that "intentionally inflicted" means "inflicted by *willful*, *wanton*, or

---

[3] The law of the forum state "provides the substantive law governing diversity cases." *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 176 (6th Cir. 1996) (citing *Erie R.R. Co. v. Thompson*, 58 S. Ct. 817 1188 (1938)). Therefore, the Court will apply Kentucky substantive law.

[4] Kentucky classifies a property visitor as one of the following: an invitee, a licensee, or a trespasser. *See Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). Defendants classify the decedent as a trespasser, *see* DE 13 at 1, and Madden never disputes that status.

5

*reckless* conduct." *Hayes v. D.C.I. Props.-D KY, LLC,* 563 S.W.3d 619, 624 (Ky. 2018) (internal quotation marks omitted) (quoting *Kirschner v. Louisville Gas & Elec. Co.*, 743 S.W.2d 840, 845 (Ky. 1988)). *Kirschner* defined this as: "the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow, and which thus is usually accompanied by a conscious indifference to the consequences[.]" *Kirschner*, 743 S.W.2d at 843. The courts indeed have likened this to intentionally injuring or setting a trap for a trespasser. *See Estate of Whitaker v. Miller Bros. Coal*, LLC, 2012 WL 6061744, at *6 (Ky. Ct. App. 2012).

Though Madden attempts to frame Holliday's purported failure to adequately secure the tank as reckless conduct, *see* DE 19-1 at 3, this argument ignores the fact that Holliday must have inflicted injury by acting with the high culpability demanded in the statute. The Complaint does not allege that Holliday, after the first encounter, subsequently altered the tank in an unsafe manner or erected the equivalent of a trap. *Cf. Middleton v. Reynolds Metals Co.*, 963 F.2d 881, 883-84 (6th Cir. 1992) (concluding that a reasonable jury could find that erecting a thin cable for the purpose of preventing trespassers constituted reckless conduct). Indeed, after seeing Mr. Madden on the tank, Holliday told him to leave and left the scene secured in the manner he normally does. Nothing in the pleadings, relevant papers, (or facts) suggests that Holliday knew Madden was opening the tank or had accessed the internal workings of the equipment. Holliday did nothing to create a high probability of ensuing harm. Mr. Madden, merely obeying property rules and the direct admonition of Holliday, would have avoided any risk, and Holliday should be able to safely assume that an adult will follow the laws against trespassing.

Further, the Complaint fails to demonstrate that Holliday owed Mr. Madden a duty. Given Mr. Madden's status as a trespasser, Holliday only owed a duty *upon discovery of the danger*. *See*

6

*Kentucky Cent. R.R. Co. v. Gastineau's Adm'r*, 1885 WL 5779, at *3 (Ky. Ct. App. June 3, 1885) ("Until [discovery of the danger] no legal duty is imposed upon [the defendant], because no one, by a wrongful act, can impose a duty upon another."). Madden's Complaint does not aver that Holliday discovered Mr. Madden in the type of peril later encountered. Being on the tank's catwalk a week prior hardly is notice that Mr. Madden would face the danger he trespassed into (and chose) on the fateful day.

Beyond Mr. Madden's status as a trespasser, the Court also may consider factors such as foreseeability and "the gravity of the potential harm[.]" *Perry v. Williamson*, 824 S.W.2d 869, 875 (Ky. 1992). Madden argues that Mr. Madden's death was foreseeable to Holliday given their prior interaction at the tank. The Court finds this argument clearly unavailing. As noted above, a duty to trespassers only arises upon discovery of the danger. In other words, Holliday "is not required to anticipate the intrusion of others; and one who enters [the premises] without right, does so at his own peril[.]" *Kentucky Cent. R.R. Co.*, 1885 WL 5779, at *2. True, the law differs when "a possessor of land . . . knows, or from the facts within his knowledge should know, that trespassers constantly intrude upon a limited area[.]" *Louisville & N.R. Co. v. Spoonamore's Adm'r*, 129 S.W.2d 175, 177 (Ky. Ct. App. 1939) (internal quotation marks omitted) (quoting RESTATEMENT OF THE LAW OF TORTS, Vol. 2, § 334). In *Spoonamore's*, the court found that the defendant would have a duty to anticipate persons on railway tracks where witnesses detailed "frequent and habitual use by the public at the place of the accident . . . over a period of 12 or 15 years[.]" *Id.* Here, Holliday and Mr. Madden's encounter at the tank was a one-off instance. Holliday purportedly told Mr. Madden to leave the area. Nothing in the Complaint indicates Holliday had reason to believe that Mr. Madden would return or intended to return. For these

reasons, there is no colorable negligence claim against Holliday.[5]  Mr. Madden's status as a trespasser, which sharply narrows the duty field, eliminates any potential liability of Holliday.  He was improperly joined.[6]

IV.     **Conclusion**

For the above reasons, the Court **OVERRULES** Madden's objections (DE 19) and **ADOPTS** Judge Ingram's recommended disposition (DE 18).  The Court dismisses the improperly joined Holliday and otherwise retains the case on the Court's active docket.

This the 25th day of March, 2024.



Signed By:
Robert E. Wier /REW/
United States District Judge

---

[5] As noted above, the Court deemed Madden's other two claims against Holliday waived.  Even if the Court were to review those arguments *de novo*, the outcome here would not change.  Neither theory provides for recovery against Holliday.  First, the attractive nuisance doctrine applies only when the injured party is a child, and Mr. Madden was twenty-two-years-old when he died.  *See Hayes v. D.C.I. Properties-D KY, LLC*, 563 S.W.3d 619, 624 (Ky. 2018) (finding the attractive nuisance doctrine did not apply when the injured party was sixteen years old).  Second, as to negligence per se, Madden cites one irrelevant statute, K.R.S. § 353.565, and one non-existent statute, K.R.S. § 466.070.  DE 1-1 ¶¶ 15, 27.  As Defendants and Judge Ingram stated, Madden likely intended to cite K.R.S. § 353.656, which requires well operators to display danger signs on oil storage facilities, and K.R.S. § 446.070, Kentucky's negligence per se statute.  *See* DE 1 ¶ 14; 18 at 11.  Per § 446.070, "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation."  § 446.070.  Even presuming Madden intended to cite § 353.656, this statute only applies to well operators (which, as defined by K.R.S. § 353.510(17), means an owner).  Holliday was an employee of Jetta and had no ownership of the oil well.  Further, Madden does not offer, and the Court is not aware of, any case law or statute that extends liability under that statute to employees.  Neither theory offers a glimmer of hope regarding recovery by Plaintiff against Holliday.

[6] The Court also agrees that the forum defendant rule hinges on the propriety of joinder.  The Court sees no objection to that part of Judge Ingram's decision.  That mechanism rises or falls here with the fraudulent joinder finding.